# United States Court of Appeals
## For the First Circuit

No. 13-2260

BRUNILDA AYALA,

Plaintiff, Appellant,

v.

ERIC KEN SHINSEKI;
UNITED STATES DEPARTMENT OF VETERANS AFFAIRS;
VETERANS HOSPITAL IN PUERTO RICO,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Camille L. Vélez-Rivé, U.S. Magistrate Judge]

Before

Torruella, Lipez, and Barron,
Circuit Judges.

Vladimir Mihailovich, for appellant.
Lisa E. Bhatia-Gautier, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Juan Carlos Reyes-Ramos, Assistant United States Attorney, were on brief, for appellees.

March 6, 2015

**TORRUELLA, Circuit Judge**. Plaintiff-Appellant Brunilda Ayala ("Ayala") challenges the district court's order granting partial summary judgment for her former employer, the Department of Veterans Affairs ("VA"). Specifically, Ayala contends that the district court improperly refused to apply the continuing violation doctrine to her otherwise time-barred Title VII retaliation claims against the VA. After careful consideration, we affirm.

## I. Background[1]

Ayala is a retired employee of the VA. She worked for the VA for approximately thirteen years. While at the VA, she worked primarily as a GS-4 Program Support Assistant in the VA's Caribbean Healthcare System, Office of Geriatrics and Extended Care.

Between 2001 and August 6, 2004, Ayala filed three Equal Employment Opportunity ("EEO") complaints against the VA alleging that, in retaliation for having reported her supervisor, José Rivera, for allegedly sexually harassing interns in 2000, she suffered the following retaliatory acts[2]: she was given a poor

---

[1]  The facts are drawn from the parties' statements of material uncontested facts and the exhibits submitted by the parties at the summary judgment stage. Because this is an appeal from a grant of summary judgment, we recount the facts in the light most favorable to the nonmovant, Ayala. See Franceschi v. U.S. Dep't. of Veterans Affairs, 514 F.3d 81, 83 (1st Cir. 2008).

[2]  While the record is unclear as to the exact dates of these acts, they must have taken place prior to August 6, 2004, as that was the filing date of Ayala's third EEO complaint.

recommendation that negatively affected her employment application at the Drug Enforcement Agency; she was moved to an office located in an empty and old part of the VA building; she was assigned to work in an office known as the "Piss Room," a room where urine and excrement would drop from the ceiling; she was transferred to work under a new supervisor, Dr. Melba Feliciano ("Dr. Feliciano"); and assigned sporadic work for which she did not have the proper training to complete.

In September 2004, Ayala reported Dr. Feliciano to "top management" at the VA for alleged fraud. According to Ayala, Dr. Feliciano would come to the VA in the morning, punch her time card, and leave shortly thereafter to treat patients at her private practice. Ayala alleges that, in retaliation for having reported Dr. Feliciano's activity, she was stripped of all of her duties and transferred to a small windowless office. On June 11, 2007, Ayala filed a fourth EEO complaint that recounted these allegations. Ayala alleges that these employment conditions lasted until her retirement on December 31, 2012.

Ayala also claims that, as a part of the VA's retaliation against her, she periodically received false -- though largely positive -- performance evaluations for work that she was not assigned and did not do. Specifically, she received "fully successful" performance evaluations in 2008, 2009, and 2010. She

also claims that, starting in 2000, she was passed up for statutory promotions and salary increases.

On March 13, 2009, Ayala filed a fifth EEO complaint against the VA. The VA's Office of Resolution Management ("ORM") investigated two of the claims included in that complaint[3]: (1) whether unlawful retaliation occurred when, around October 3, 2008, Ayala was assigned sporadic work to assist a social worker doing work she was unfamiliar with; and (2) whether unlawful retaliation occurred when, around November 6, 2008, Ayala received a performance evaluation based on work that she had not performed.

On January 28, 2010, the Office of Employment Discrimination Complaint Adjudication ("OEDCA") denied Ayala's fifth EEO complaint.[4] The OEDCA found that, although Ayala had stated a prima facie case of retaliation, the VA had articulated a legitimate reason for Ayala's transfer and her performance evaluations. In particular, the VA established that: (1) Ayala was transferred because no other work was available and her new assignment fit her job description, and (2) that Ayala's performance evaluations were largely positive. Moreover, the OEDCA

---

[3] The ORM partially dismissed the other claims included in Ayala's fifth EEO complaint because they were not brought to the attention of an EEO counselor or because the same claims had been previously decided by the agency or the Equal Employment Opportunity Commission ("EEOC").

[4] The record is unclear as to what happened to Ayala's other four EEO complaints.

-4-

concluded that Ayala had failed to show that these proffered reasons were in fact pretextual. The OEDCA informed Ayala of her right to file a civil action in federal court.

On April 26, 2010, Ayala filed a civil action in the district court pursuant to Title VII's antiretaliation provision, 42 U.S.C. § 2000e-3(a).[5] The complaint recounts all of the aforementioned alleged retaliatory acts, not only those contained in her fifth EEO complaint. The VA moved for summary judgment. The district court entered an Opinion and Order granting partial summary judgment in favor of the VA, dismissing all but one of Ayala's retaliation claims. In its Opinion and Order, the court noted that, pursuant to Title VII's procedures, Ayala should have filed her charges of discrimination within 300 days of the alleged unlawful employment practice occurring.[6] The court then held that

---

[5] "Unlike its private-sector counterpart, Title VII does not contain an express antiretaliation provision applicable to the federal government as employer. See 42 U.S.C. § 2000e-16(a). Nonetheless, we have assumed that the antiretaliation provision applicable to private employers operates to prohibit retaliation in the federal sector." Morales-Vallellanes v. Potter, 605 F.3d 27, 35-36 (1st Cir. 2010); see also Velázquez-Ortiz v. Vilsack, 657 F.3d 64, 72 (1st Cir. 2011).

[6] The district court incorrectly ruled that Ayala had to file her charges of discrimination against her "employer" within 300 days of the alleged unlawful employment practice occurring. The applicable limitations period was actually shorter.

Section 2000e-5(e)(1) sets out a general limitations period of 180 days for a plaintiff to file a charge of discrimination against her employer. That period is extended to 300 days in deferral jurisdictions if the plaintiff has initially instituted proceedings with a State or local agency authorized "to grant or seek relief

since Ayala filed her fifth EEO complaint on March 13, 2009, all alleged retaliatory acts that took place before May 17, 2008, fell outside the 300-day limitations period and, therefore, were time-barred. The court rejected Ayala's argument that the continuing violation doctrine saved her belated claims because, according to the district court, each alleged retaliatory act was easily identifiable and qualified as a "discrete discriminatory act."

The district court ruled that only two of Ayala's claims were timely: (1) her allegation that her performance evaluations since 2008 were unlawful retaliation because they supposedly rated her for work that she did not perform; and (2) her contention that the VA's failure to promote her or increase her salary since 2008 was unlawful retaliation for engaging in protected activity. The court nevertheless granted summary judgment as to the first of those claims finding that, inasmuch as her performance evaluations

from the allegedly illegal practice." Rivera-Díaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 390 (1st Cir. 2014) (quoting 42 U.S.C. § 2000e-5(e)(1)) (internal quotation marks omitted). However, federal agencies are excluded from the definition of the term "employer." See 42 U.S.C. § 2000e(b). Instead, federal agencies are covered under separate sections of Title VII, regardless of the number of employees they have. 42 U.S.C. § 2000e-16(a). Complaints against federal agencies are processed under the procedures set forth in 29 C.F.R. § 1614. Pursuant to 29 C.F.R. § 1614.105(a)(1), an individual wishing to initiate a complaint against a federal agency, such as Ayala, must contact an EEO counselor within forty-five days of the alleged unlawful employment practice. See also Velázquez-Rivera v. Danzig, 234 F.3d 790, 794 (1st Cir. 2000) ("[A] federal employee's failure to contact an EEOC counselor within the limitations period causes him to lose his right to pursue a later de novo action in court." (citing Román-Martínez v. Runyon, 100 F.3d 213, 216-18 (1st Cir. 1996))).

were positive and not materially adverse, Ayala had failed to show a prima facie case of retaliation.

Ayala then requested voluntary dismissal with prejudice of the only remaining claim: that the VA unlawfully retaliated against her by failing to promote her or increase her salary. The district court granted her request and dismissed the entire complaint with prejudice.

Ayala timely filed this appeal.

## II. Discussion

### A. Standard and Scope of Review

We review the district court's grant of summary judgment de novo. Litz v. Saint Consulting Grp., Inc., 772 F.3d 1, 3 (1st Cir. 2014). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Velázquez-Pérez v. Developers Diversified Realty Corp., 753 F.3d 265, 270 (1st Cir. 2014) (quoting Federal Rule of Civil Procedure 56(a)).

### B. Analysis

Ayala challenges only the district court's conclusion that the alleged adverse employment actions that took place more than 300 days before she filed her EEO complaint constitute

discrete acts that are time-barred.[7]  She contends that, because the effects of those actions lasted until her retirement from the VA, they constitute a continuing violation and, thus, her claims were timely asserted.  In the alternative, Ayala posits that if the alleged adverse employment actions are indeed discrete acts, she should at least be entitled to recover damages for the period covering 300 days before filing her EEO complaint up until her retirement.  We disagree with both arguments.

Title VII, which protects employees against discrimination based on race, color, religion, sex, or national origin, requires a claimant seeking to recover for a discrete act of discrimination to file her claims of unlawful employment practices within either 45, 180, or 300 days of the occurrence of that practice.  The applicable term depends on whether the action is filed against a federal or private employer, and on which agency the action is filed.[8]  42 U.S.C. §§ 2000e-5(e)(1), 2000e-16(a).  If a claimant fails to do so, discrete discriminatory acts will be time-barred, and thus not actionable, even if they are related to acts alleged in timely filed charges.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

---

[7]  Ayala does not challenge the district court's other rulings regarding her performance evaluations since 2008 or the dismissal with prejudice of her claims related to VA's failure to promote her or increase her salary.

[8]  See footnote 6, supra.

-8-

Courts have recognized a narrow exception to the limitations period via the "continuing violation doctrine." See Pérez-Sánchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008). "Under the 'continuing violation' doctrine, a plaintiff may obtain recovery for discriminatory acts that otherwise would be time-barred so long as a related act fell within the limitations period." Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 (1st Cir. 2009). However, this doctrine does not apply to "discrete acts" of alleged discrimination that occur on a "particular day." Id. Instead, it applies only to claims that cannot be said to occur on a particular day and that by their very nature require repeated conduct to establish an actionable claim, such as hostile work environment claims. Id. The continuing violation doctrine simply "allow[s] suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." Morales-Tañón v. P.R. Elec. Power Auth., 524 F.3d 15, 19 (1st Cir. 2008) (quoting Limestone Dev. Corp. v. Vill. of Lemont, Ill., 520 F.3d 797, 801 (7th Cir. 2008)); see also Morgan, 536 U.S. at 115 ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct."); Johnson v. Univ. of P.R., 714 F.3d 48, 53 (1st Cir. 2013) ("Discrete acts and hostile work environment claims are 'different in kind,' because hostile work environment claims by their nature involve repeated

conduct and a single act of harassment may not be actionable on its own." (internal citations omitted)).

The Supreme Court stated in Morgan that "termination, failure to promote, denial of transfer, or refusal to hire" are easily identifiable discrete acts instantaneously actionable. Morgan, 536 U.S. at 114. In addition, we have held that the denial of a reasonable accommodation, the failure to renew a contract, a change of supervisor, a relocation to another floor, a transfer to another office, and the failure to assign work to an employee also constitute discrete acts. See Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 30, 33-34 (1st Cir. 2009) (refusing to apply the continuing violation doctrine to employer's failure to provide the employee-plaintiff with reasonable accommodations for his disability); Ruiz-Sulsona v. Univ. of P.R., 334 F.3d 157, 160 (1st Cir. 2003) (finding that employer's failure to renew plaintiff's contract constituted a discrete act); Rivera v. P.R. Aqueduct & Sewers Auth., 331 F.3d 183, 186-89 (1st Cir. 2003) (holding that moving plaintiff to a smaller office and transferring her from one supervisor to another who did not assign her any work constituted discrete acts). Similarly, a negative performance evaluation, transfer to another area, and letter of warning also constitute discrete acts. Miller v. N.H. Dep't. of Corr., 296 F.3d 18, 21-22 (1st Cir. 2002); see also Malone v. Lockheed Martin Corp., 610 F.3d 16, 20-22 (1st Cir. 2010) (refusing to find a hostile work

environment and, subsequently, to apply the continuing violation doctrine to the plaintiff's claims that he "received a series of escalating reprimands, deteriorating performance reviews, and eventually a demotion" on account of his race, because those reprimands, reviews, and demotion were discrete acts).

"Each discrete discriminatory act starts a new clock for filing charges alleging that act." Morgan, 536 U.S. at 113. It is well-established that the statute is triggered upon the initial occurrence of the discrete adverse employment action, even if "the effect of the employer's [actions] continues to be felt by the employee for as long as he remains employed." Tobin, 553 F.3d at 132 (quoting Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 135 (2d Cir. 2003)) (internal quotation marks omitted). Also, "an employee may not extend or circumvent the limitations period by requesting modification or reversal of an employer's prior action." Id. at 131.

Here, Ayala does not advance a hostile work environment claim. Instead, she claims that, between 2000 and September of 2004, her employer retaliated against her by giving her a negative recommendation for an employment she was seeking, relocating her to work at an empty and old part of the building, transferring her to the so-called "Piss Room," and placing her under the supervision of Dr. Feliciano. Ayala also claims that after she reported Dr. Feliciano for fraud in September 2004, her employer further

retaliated against her by stripping her of all her duties and transferring her to a small windowless office.

On appeal, Ayala correctly concedes that all adverse actions taken against her before September 2004 are discrete acts and, thus, time-barred. Therefore, we need not dwell on those claims. However, she alleges that the continuing violation doctrine applies to the actions taken after said date, namely stripping her of all duties and transferring her to a small windowless office.

Although Ayala does not explain the reasoning behind her allegation that the transfers prior to September 2004 are discrete acts, while a similar transfer after September 2004 is not, it seems that her reasoning is grounded on the fact that the effect of the latter transfer continued until her retirement and, thus, she alleges, it constituted a "continuing violation." Her reasoning is flawed.

As explained above, the continuing violation doctrine is meant to protect plaintiffs from losing the ability to file suit for Title VII claims that might, by their nature, take time to materialize. See Limestone Dev. Corp., 520 F.3d at 801 (holding that the continuing violation doctrine simply "allow[s] suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought"). Plaintiffs might not realize that a violation has occurred, or might not have sufficient evidence to

support a Title VII claim until more than the general time limit to file their claims has elapsed. See id. Therefore, courts have been willing to toll Title VII's filing requirements in order to preserve such legitimate claims.

This consideration is not applicable to discrete acts, such as those alleged by Ayala, which are easy to identify and immediately actionable. Our case law is clear that transfers to other offices are easily identifiable discrete acts. Rivera, 331 F.3d at 187-89. Similarly, stripping an employee of all her duties is also a discrete act. See id. (rejecting plaintiff's claim that her transfer to a smaller office in the finance area and her supervisor's failure to assign her work after said transfer, despite plaintiff's repeated requests for assignments, constituted a continuing violation). As such, and assuming that the transfer was indeed to Ayala's detriment, upon being transferred to the small windowless room and being stripped of all her duties, Ayala should have known that she had been subjected to adverse employment actions. Thus, she should have acted promptly, instead of waiting almost three years to assert her rights.[9] Since she failed to do so, her claims are time-barred.

That the effect of these alleged actions lasted until her retirement does not help Ayala. Title VII was triggered upon the

---

[9] Ayala included this claim in her fourth EEO complaint, which was filed on June 11, 2007.

initial occurrence of the adverse employment actions, even if their effects continued to be felt for as long as she remained employed. See Tobin, 553 F.3d at 132. Nor is she entitled to recover damages for the period comprised of forty-five[10] days before filing her EEO complaint up until her retirement, since it is clear that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Morgan, 536 U.S. at 113.

### III. Conclusion

Since both employment actions challenged by Ayala constitute discrete acts, the continuing violation doctrine does not apply to Ayala's claims and, thus, her claims are time-barred. Therefore, we affirm the district court's amended judgment.[11]

**Affirmed**.

---

[10] Although she claims entitlement to recover damages dating back to 300 days before filing her EEO complaint, we have already established that the limitations period applicable to her was forty-five days after the alleged unlawful employment practice occurred.

[11] As an additional ground to affirm the dismissal of Ayala's complaint, the VA alleges that Ayala failed to establish a prima facie case of retaliation. The VA contends she alleges only that the immediate cause of the adverse employment actions was her reporting her supervisor for fraud and that reporting a supervisor for fraud is not a protected ground under Title VII. See 42 U.S.C. §§ 2000e-3(a), 16(a); Ponte v. Steelcase Inc., 741 F.3d 310, 321 (1st Cir. 2014). Our conclusion that Ayala's claims are time-barred make it unnecessary to discuss this issue.

-14-