# United States Court of Appeals
## For the First Circuit

No. 21-1521

ELVIN TORRES-ESTRADA,

Plaintiff, Appellant,

v.

CARLOS CASES, Special Agent in Charge, FBI Puerto Rico Office,
individually and in his official capacity; JOSE GONZALEZ, FBI
Agent, individually and in his official capacity; GUSTAVO
RIVERA, FBI Agent, individually and in his official capacity;
MARIO RENTERIA, FBI Agent, individually and in his official
capacity; AARON GREEN, FBI Agent, individually and in his
official capacity; DEVIN J. KOWALSKI, FBI Agent, individually
and in his official capacity; LUIS ALOYO, Deputy U.S. Marshal,
individually and in his official capacity; UNITED STATES; DOES
1-25, Inclusive,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Silvia Carreño-Coll, U.S. District Judge]

Before

Barron, Chief Judge,
Lipez and Montecalvo, Circuit Judges.

Annaleigh E. Curtis, with whom Thomas G. Saunders, Wilmer
Cutler Pickering Hale and Dorr LLP, Ezekiel E. Cortez, Law Office
of Ezekiel E. Cortez, and James D. Crosby were on brief, for
appellant.
Gerard Sinzdak, Appellate Staff, Civil Division, Department
of Justice, with whom Mark B. Stern, Appellate Staff, Civil

Division, <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, and <u>W. Stephen Muldrow</u>, United States Attorney, were on brief, for appellees.

December 6, 2023

**MONTECALVO, Circuit Judge.** Elvin Torres-Estrada ("Torres-Estrada") brought Bivens and Federal Tort Claims Act ("FTCA") claims against the Federal Bureau of Investigation ("FBI") and several FBI agents alleging violations of his constitutional and statutory rights. The district court dismissed his complaint and held that some of his claims were untimely and that the FTCA's discretionary function exception stripped the court of jurisdiction to adjudicate his other claims. Torres-Estrada challenges the dismissal, arguing that his claims are timely, that the discretionary function exception does not apply, and that even if the discretionary function exception does apply, it does not cover the FBI's alleged misconduct.

Based on our precedent, Torres-Estrada is correct that the district court erred: the discretionary function exception does not serve as a bar to FTCA tort claims that plausibly allege constitutional violations. Nor are all of Torres-Estrada's claims untimely. While not all of his claims survive, we conclude that at least two of his claims are potentially subject to the "continuing violation" doctrine and so the district court erred in dismissing his claims as untimely without first considering the doctrine's applicability. And because new facts have come to light throughout the course of this litigation, we grant Torres-Estrada leave to amend his complaint. Accordingly, we affirm in part,

reverse in part, and remand for further proceedings consistent with this opinion.

## I.  Background

In reviewing the dismissal of a complaint, we accept the well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of Torres-Estrada.  Núñez Colón v. Toledo-Dávila, 648 F.3d 15, 19 (1st Cir. 2011).  Accordingly, we draw the facts below from Torres-Estrada's complaint.

In February 2013, Lieutenant Osvaldo Albarati, a correctional officer at the Metropolitan Detention Center ("MDC") in Guaynabo, Puerto Rico, was murdered.  At the time, Torres-Estrada was detained at the MDC pending prosecution for drug and money laundering offenses.[1]  Shortly after the murder, the FBI began investigating Torres-Estrada as a possible suspect in the murder.

By January 2015, nine other prisoners had been indicted on charges relating to Lt. Albarati's murder.  One of the indicted individuals declared that Torres-Estrada was not involved in the murder.  Despite the claims regarding Torres-Estrada's lack of involvement in Lt. Albarati's murder, the FBI has "insisted the

---

[1] In June 2010, Torres-Estrada was arrested for drug and money laundering offenses and placed in the custody of the United States Marshals.  In February 2015, after pleading guilty, Torres-Estrada was sentenced to 288 months' imprisonment.  Following sentencing, he was transferred into the custody of the Bureau of Prisons ("BOP"), where he remains.

BOP maintain records containing the false information [that] link[s] [Torres-Estrada] to the murder."

Torres-Estrada alleges that in both March and June 2013, the FBI placed informants with him to surreptitiously elicit incriminating statements about the murder. Then, in June 2014, two federal employees subjected him to a rectal exam to search for a hidden cell phone. After finding no cell phone, the officers conducted several x-ray examinations on Torres-Estrada, which also yielded no signs of a cell phone.

In 2015, the BOP transferred Torres-Estrada to a correctional facility in Kentucky, where the FBI placed another informant with him. In 2016, when Torres-Estrada was transferred to yet another facility in West Virginia, the FBI once again used an informant to try and elicit information about the murder.

In May 2017, Torres-Estrada was transferred to another correctional facility in South Carolina, where he was subjected to a custodial interrogation without having received Miranda warnings, despite being represented by counsel. In June 2017, Torres-Estrada's counsel wrote a letter to the U.S. Attorney's Office in Puerto Rico complaining about this improper interrogation. Following the letter, the BOP placed Torres-Estrada in the "Two Hour Watch," a program designed for prisoners who are disruptive, pose an escape risk, or pose a threat to staff or institution security. As part of this program, the

BOP required Torres-Estrada to report to a correctional officer every two hours, every day, even "when he may be in the midst of meeting with counsel for a legal consultation."

In addition to the above, beginning in 2015 and continuing through at least early 2017, Torres-Estrada was repeatedly and arbitrarily placed in special housing unit segregation ("SHU"). As part of this segregation, Torres-Estrada was confined to his cell except for one hour each day when he was permitted to be outside in a small, isolated gated area. This isolation occurred "at the request of unknown FBI agents as a tactic to weaken his psychological state so as to make him more susceptible to jailhouse informants." During this time, the FBI repeatedly placed informants near him to try to extract "false incriminating statements."

To protest the FBI's conduct, Torres-Estrada filed two administrative claims complaining about the allegedly unconstitutional conduct. In January 2019, having received no recourse, Torres-Estrada filed the underlying complaint in this case in federal court.[2] He brought <u>Bivens</u> claims alleging

_____

[2] Torres-Estrada initially filed the complaint in the U.S. District Court for the Southern District of California. The government moved to transfer venue, and the case was subsequently transferred to the U.S. District Court for the District of Puerto Rico.

violations of his constitutional rights,[3] see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), and FTCA claims alleging negligence, intentional infliction of emotional distress, assault, battery, and false imprisonment. In the complaint, Torres-Estrada contends that, despite his innocence, the FBI has continued to maintain records that declare his involvement in Lt. Albarati's murder. Torres-Estrada alleges that, as a result of the FBI's actions, he has remained under investigation and his constitutional rights have been repeatedly violated.

The district court dismissed all of Torres-Estrada's claims. The court first held that, due to a failure to exhaust administrative remedies within two years, any FTCA claim based on conduct occurring before December 2015 was untimely. Because the court found that any attempt to remedy the error would be futile, it also denied Torres-Estrada's request to amend the complaint. Second, the court found that the FTCA's discretionary function exception barred the rest of Torres-Estrada's FTCA claims. Third, the court held that Torres-Estrada's Bivens claims were untimely because he failed to raise them within the statute of limitations provided by Puerto Rico law.

Torres-Estrada timely appealed.

---

[3] Specifically, Torres-Estrada alleges violations of his First, Fourth, Fifth, Sixth, and Eighth Amendment rights.

## II.  Discussion

To summarize, in his complaint, Torres-Estrada claims the FBI denied him his due process rights, his right to counsel, and "his speech and associational rights" as well as subjected him to "repeated unreasonable searches" and "cruel and unusual punishment through several years of long stretches in solitary confinement."  These asserted constitutional violations -- and the conduct underlying them -- form the basis of his claims under the FTCA and Bivens.

On appeal, Torres-Estrada challenges the district court's conclusion that the FTCA's discretionary function exception covers the FBI's alleged unconstitutional conduct.  As for the timeliness of his claims, he maintains that under the "continuing violation" doctrine each of his claims is within the applicable statute of limitations.  We take his arguments in turn.

### A. Negligence and False Imprisonment FTCA Claims

We begin with the district court's ruling that it lacked subject-matter jurisdiction over the FTCA claims.  We review a "district court's determination that the discretionary function exception does or does not apply" de novo.  Limone v. United States, 579 F.3d 79, 101 (1st Cir. 2009).  As an initial matter, we note that the government and Torres-Estrada agree that Torres-Estrada's negligence claim and false imprisonment claim are both timely and properly exhausted.  As a result, we defer our

- 8 -

discussion of the remaining counts for the following section and focus first on his negligence and false imprisonment claims.

The FTCA provides a "limited waiver of the federal government's sovereign immunity with respect to private causes of action sounding in tort." Fothergill v. United States, 566 F.3d 248, 252 (1st Cir. 2009) (citing Shansky v. United States, 164 F.3d 688, 690 (1st Cir. 1999)). The FTCA's discretionary function exception, however, dictates that sovereign immunity continues to apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). In short, "the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." Berkovitz v. United States, 486 U.S. 531, 537 (1988). "If the discretionary function exception applies, the [government] is completely immune from suit, and the claim must be dismissed for lack of subject[-]matter jurisdiction." Santoni v. Potter, 369 F.3d 594, 602 (1st Cir. 2004) (citing Kelly v. United States, 924 F.2d 355, 360 (1st Cir. 1991)).

But "[i]t is elementary that the discretionary function exception does not . . . shield conduct that transgresses the Constitution." Limone, 579 F.3d at 101 (citations omitted). And

the reason for this is simple: "[f]ederal officials do not possess discretion to violate constitutional rights." Thames Shipyard & Repair Co. v. United States, 350 F.3d 247, 255 (1st Cir. 2003) (alteration in original) (quoting Medina v. United States, 259 F.3d 220, 225 (4th Cir. 2001)).

Torres-Estrada's negligence and false imprisonment claims should not have been dismissed for lack of subject-matter jurisdiction. When deciding if the discretionary function exception barred Torres-Estrada's FTCA claims, the district court failed to consider whether the complaint adequately alleged unconstitutional conduct. On this issue, our precedent is clear. If the FBI's conduct violated the Constitution, then the discretionary function exception does not apply, and sovereign immunity is waived. Limone, 579 F.3d at 101. As explained in Limone, "we do not view the FBI's constitutional transgressions as corresponding to the plaintiffs' causes of action -- after all, the plaintiffs' claims are not Bivens claims -- but rather, as negating the discretionary function defense." 579 F.3d at 102 n.13 (citing Bolduc v. United States, 402 F.3d 50, 56 (1st Cir. 2005)). But to be clear, under Limone, even though the cause of action is tied to tortious conduct, a plaintiff must show how the alleged conduct violates the Constitution. In short, the required analysis here is not whether the FBI agents exercised discretion

but whether Torres-Estrada has sufficiently alleged that the FBI's alleged tortious conduct violated the Constitution.

The government first contends that Torres-Estrada's "allegations do not demonstrate a violation of a clearly established constitutional command," which renders them insufficient. In essence, the government argues that the principles of qualified immunity should also apply in our FTCA discretionary function analysis -- a contention the government claims Limone supports.[4] Despite the government's argument, Limone does not hold that a constitutional violation must be "clearly established" before it falls outside of the discretionary function exception. Rather, the Limone court simply pointed out that the plaintiffs' allegations "stated a clear violation of due process." 579 F.3d at 102. Limone instead stands for the "elementary" proposition that unconstitutional conduct is "not within the sweep of the discretionary function exception." Id. at 101-02. The single sentence of dicta on which the government relies does not support its contention that qualified immunity applies in the discretionary function context.

_____

[4] To make this argument, the government points to "the limits of qualified immunity" that apply in Bivens actions, noting that if qualified immunity applied in Bivens actions but not in FTCA claims, it could "permit the United States to be liable for conduct even when its employees are not."

Indeed, such an application would be novel; we have found no precedent -- in this Circuit or any other -- to support the government's contention.  In fact, we find the exact opposite in the Third Circuit, which has explicitly stated that the "'clearly established' requirement has no place" in the discretionary function analysis.  Xi v. Haugen, 68 F.4th 824, 839 (3d Cir. 2023) (holding that applying a "clearly established" requirement in the discretionary function context would be "unmoored from both precedent and purpose").  We agree with the Third Circuit and decline to import the "clearly established" requirement into the discretionary function exception analysis.  Thus, to the extent Torres-Estrada's complaint plausibly alleges conduct that was unconstitutional, it was improper to dismiss the claims on the basis of discretionary function immunity without applying Limone.

The government further argues that Torres-Estrada has failed to allege plausible unconstitutional conduct by the FBI that would overcome the discretionary function exception's protection.  Specifically, the government contends that the actual target of Torres-Estrada's complaint is the BOP -- not the FBI -- and the BOP's conduct in this case.  The government argues that even if we accept Torres-Estrada's allegations as true, his complaint does not allege a plausible constitutional violation by the FBI or its agents.  We may affirm the ruling below on "any ground manifest in the record," see Walker v. Medeiros, 911 F.3d

- 12 -

629, 634-35 (1st Cir. 2018), and the government is correct to identify that because Torres-Estrada's tort claims are against the FBI, Torres-Estrada must demonstrate how the FBI's conduct violated the Constitution; allegations of the BOP's unconstitutional conduct will not suffice. But rather than address these questions now, we remand Torres-Estrada's negligence and false imprisonment claims to the district court to apply Limone in the first instance.[5]  In doing so, we follow the lead of the D.C.

---

[5] If, on remand, the district court finds, after applying Limone, the constitutional allegations inadequate, the court should then consider whether the FTCA's law enforcement proviso, 28 U.S.C. § 2680(h), should be read to trump the discretionary function exception -- an unsettled question in this circuit. The law enforcement proviso waives sovereign immunity for any claim arising out of "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" based on the "acts or omissions of investigative or law enforcement officers of the United States Government." Id. The Eleventh Circuit has held that "if a claim is one of those listed in [§ 2680(h)], there is no need to determine if the acts giving rise to it involve a discretionary function; sovereign immunity is waived in any event." Nguyen v. United States, 556 F.3d 1244, 1257 (11th Cir. 2009). The Nguyen court reached this conclusion by noting that the law enforcement proviso began with "any claim," that the law enforcement proviso was a more specific and more recently enacted provision than the discretionary function provision, and that the congressional purpose behind the proviso demanded such a conclusion. Id. Other circuits that have considered the issue, however, have decided that the two clauses can be harmonized. Under their reasoning, the law enforcement proviso can be read together with the discretionary function exception by permitting suits for any listed "intentional torts . . . [that are] committed without any exercise of a discretionary function." Gray v. Bell, 712 F.2d 490, 507 (D.C. Cir. 1983); see also Linder v. United States, 937 F.3d 1087, 1089 (7th Cir. 2019); Campos v. United States, 888 F.3d 724, 737 (5th Cir. 2018); Medina v. United States, 259 F.3d 220, 226 (4th Cir. 2001); Gasho v. United States, 39 F.3d 1420, 1433 (9th Cir. 1994).

- 13 -

Circuit and ask that the "district court [] determine in the first instance whether [Torres-Estrada's] complaint plausibly alleges that the [FBI's] conduct exceeded the scope of its constitutional authority so as to vitiate discretionary-function immunity." Loumiet v. United States, 828 F.3d 935, 946 (D.C. Cir. 2016).

## B. Remaining FTCA Claims and Bivens Claims

We now turn to Torres-Estrada's remaining FTCA claims and his Bivens claims. The district court dismissed Torres-Estrada's pre-December 2015 FTCA claims as time-barred due to a failure to exhaust administrative remedies within two years. Holding that amendment would be futile to cure the error, the district court denied leave to amend the complaint. Then, applying the Puerto Rico statute of limitations, the district court found

Further, if the district court finds that the constitutional allegations are inadequate and that the law enforcement proviso negates the discretionary function protection, the court should consider whether the FBI's actions are a result of carelessness and whether such action would fall outside the protection of the discretionary function exception. However, we express no views on the additional argument that Torres-Estrada makes in pressing his negligence claim that the discretionary function exception does not protect careless conduct and that, therefore, if "the FBI's maintenance of inaccurate records about [Torres-Estrada] is thought to be a mere act of carelessness or inattention to the records rather than an intentional act, the discretionary function exception does not apply." See Coulthurst v. United States, 214 F.3d 106, 111 (2d Cir. 2000), Rich v. United States, 811 F.3d 140, 147 (4th Cir. 2015), Palay v. United States, 349 F.3d 418, 432 (7th Cir. 2003). But see Willis v. Boyd, 993 F.3d 545, 549 (8th Cir.), cert. denied sub nom. Willis v. United States, 142 S. Ct. 584 (2021); Gonzalez v. United States, 814 F.3d 1022, 1033 (9th Cir. 2016); Kiehn v. United States, 984 F.2d 1100, 1105 (10th Cir. 1993).

Torres-Estrada's Bivens claims similarly time-barred because they all occurred outside of the applicable one-year statute of limitations.

We review a district court's grant of a motion to dismiss de novo.  Carter's of New Bedford, Inc. v. Nike, Inc., 790 F.3d 289, 291 (1st Cir. 2015).  And "[a]lthough we generally review a district court's denial of a motion to amend for abuse of discretion, within that standard, pure questions of law are reviewed de novo."  Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 21 n.4 (1st Cir. 2017) (cleaned up).  Here, the district court predicated its decision on the motion to amend entirely on a pure question of law: whether Torres-Estrada's FTCA claims were time-barred.  As a result, our review of the district court's denial of the motion to amend is de novo.  See Skwira v. United States, 344 F.3d 64, 72 (1st Cir. 2003) (noting that whether an FTCA claim is time-barred is a matter of law); D'Agostino v. ev3, Inc., 845 F.3d 1, 6 (1st Cir. 2016).

### 1. Pre-December 2015 FTCA Claims

We begin with Torres-Estrada's remaining FTCA claims based on conduct occurring before December 2015.  We affirm the district court's dismissal of the assault and battery claims, but we vacate and remand as to Torres-Estrada's claim of intentional infliction of emotional distress.

Under the "continuing violation" doctrine, "a plaintiff may obtain recovery for . . . acts that otherwise would be time-barred so long as a related act fell within the limitations period." Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 (1st Cir. 2009). This doctrine, however, does not apply to "discrete acts" that occur on specific dates. Id. Rather, it only covers acts that take place over a prolonged period and that "by their very nature require repeated conduct to establish an actionable claim, such as hostile work environment claims." Ayala v. Shinseki, 780 F.3d 52, 57 (1st Cir. 2015). If a claim meets that criterion, then, if there is "an act contributing to the claim [that] occurs within the filing period, the entire time period of the [claim] may be considered for the purposes of determining liability." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002); see also Loumiet, 828 F.3d at 948-49 (recognizing and applying the "continuing violation" doctrine to Bivens and FTCA claims).

In dismissing the pre-December 2015 allegations,[6] the court focused on Torres-Estrada's allegation of an unnecessary and invasive June 2014 body search. Unlike a hostile work environment claim, which is "composed of a series of separate acts," Nat'l

_____

[6] The alleged conduct that occurred prior to December 2015 is as follows: (1) certain uses of jailhouse informants to elicit potentially incriminating statements and (2) the June 2014 body search.

R.R. Passenger Corp., 536 U.S. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)), a claim for assault or battery is actionable after a single instance and does not require a pattern of continued conduct before a claim can be made. Cf. United States v. Kubrick, 444 U.S. 111, 120 (1979) (noting that "the general rule under the [FTCA] has been that a tort claim accrues at the time of the plaintiff's injury"). Thus, we conclude that this search would be a "discrete act" not subject to the "continuing violation" doctrine. Given that Torres-Estrada concedes that he did not file an administrative claim until December 2017, the body search falls outside of the two-year time period to file an administrative claim. See 28 U.S.C. § 2401(b) (establishing that an FTCA claim must be brought in writing to the relevant agency within two years after accrual of the claim). Because Torres-Estrada's assault and battery claims are premised upon the June 2014 body search, we affirm the dismissal of those two claims.

But Torres-Estrada's pre-December 2015 allegations contain more than just the body search in June 2014. He alleges the repeated use of jailhouse informants from 2013 to 2015 that caused "the disruption of his right to be free from surreptitious interrogation." He also alleges that from 2015 to 2017 his SHU segregation caused his psychological condition to rapidly deteriorate. These allegations underpin Torres-Estrada's intentional infliction of emotional distress claim.

- 17 -

Torres-Estrada maintains that through at least December 2017, the FBI continued to place jailhouse informants near him in an attempt to elicit incriminating testimony, and, through at least early 2017, he was arbitrarily and repeatedly placed into isolation.

Because Torres-Estrada relies on a "continuing violation" doctrine for his FTCA claims, we vacate the dismissal of his intentional infliction of emotional distress claim. We note that we do so without deciding whether the use of jailhouse informants constitutes a "continuing violation," leaving the district court to analyze the issue on remand.[7]

## 2. **Bivens** Claims and Motion to Dismiss

As an initial matter, we take no issue with the district court's choice of the applicable statute of limitations or its assessment of when the acts took place. But the district court erred in failing to address Torres-Estrada's "continuing violation" theory.[8]

---

[7] On remand, as with the negligence and false imprisonment claims, when assessing Torres-Estrada's intentional infliction of emotional distress claim, the district court should undertake a Limone analysis to confirm that the conduct underlying that claim plausibly presents a violation of the Constitution that negates the discretionary function exception's protection.

[8] The government also raises an issue with the service of process of the individual Bivens defendants and asks us to affirm on that ground. Because the government repeatedly maintained that it does not represent the individual defendants, the government is in no position to raise this issue on behalf of those defendants.

Torres-Estrada argues that his Bivens claims allege a violation of his constitutional rights, resulting from continuing courses of conduct. Torres-Estrada points to his allegations of the FBI's continued interference with the BOP's maintenance of accurate records and his placement in the "Two Hour Watch" program as a result of that interference.

These types of allegations map perfectly onto the "continuing violation" doctrine. Whereas an allegation of a single instance of interference would likely not be actionable, an allegation of a continued pattern of interference, which exacted "excessive and unwarranted punishment" upon Torres-Estrada and interfered with his ability to consult with counsel, necessarily requires "repeated conduct to establish an actionable claim." Ayala, 780 F.3d at 57. So, if Torres-Estrada is bringing claims that are "composed of a series of separate acts that collectively constitute one unlawful . . . practice," then as long as one of those acts falls within the applicable time period, the court may consider acts that occur outside of it. Nat'l R.R. Passenger Corp., 536 U.S. at 117 (cleaned up). While it is possible that on remand the district court may find that Torres-Estrada's Bivens allegations were all "discrete acts" and not a part of a continuing violation, the district court erred by finding Torres-Estrada's

Bivens claims time-barred without considering the "continuing violation" doctrine.[9]

### 3. Leave to Amend

Finally, we address Torres-Estrada's request that this court allow amendment. Specifically, he requests now, as he did before the district court, leave to amend his complaint to include additional acts of assault and battery and new allegations addressing exhaustion of his FTCA claims. Ordinarily, if we affirm an order of dismissal, we do not permit amendment. See Rivera-Gomez v. de Castro, 843 F.2d 631, 635-36 (1st Cir. 1988). But leave to amend should be "freely give[n]" when "justice so requires." Fed. R. Civ. P. 15(a)(2). And "an appellate court has the power, in the interest of justice, to grant leave to amend if the circumstances warrant." Rivera-Gomez, 843 F.2d at 636.

The circumstances here warrant allowing amendment. As we have previously noted, a valid reason for leave to amend is

---

[9] On remand, the district court should also ensure that Torres-Estrada has made a cognizable Bivens claim. To make such a claim, Torres-Estrada must make clear both what the wrongful conduct is and how it violates the Constitution. Specifically, the conduct must violate the Fourth, Fifth, or Eighth Amendment. See González v. Vélez, 864 F.3d 45, 52-53 (1st Cir. 2017). In its order, the district court briefly discussed this issue but ultimately dismissed the Bivens claim for untimeliness.

Further, as with all Bivens cases, the focus must be on the conduct of the individual government agents and not the government entity. The district court should consider how this focus may affect Torres-Estrada's "continuing violation" argument.

"the discovery of new information." Amyndas Pharms., S.A. v. Zealand Pharma A/S, 48 F.4th 18, 37 (1st Cir. 2022). During this litigation, Torres-Estrada has uncovered new facts that contribute to his claims. As one pertinent example, Torres-Estrada now points to his inmate profile attached to the government's motion to dismiss or transfer venue. The profile carries a note declaring that Torres-Estrada was "INVOLVED MURDER BOP LT @ GUA" and was an "ESCAP RESK." In mid-2019, when Torres-Estrada discovered this document during this litigation, he requested multiple times that the BOP remove the note due to its inaccuracy. The BOP denied the request and stated that "according to the Designations and Sentence Computation Center (DSCC), you were a Federal Bureau of Investigations (FBI) suspect in the death of an officer at MDC Guaynabo." This note, combined with the BOP's denial of Torres-Estrada's request, could contribute to his claims. And Torres-Estrada maintains that he now has additional facts regarding his other claims, including new assault and battery claims. As such, given the information that has been revealed before fact discovery has even occurred, this factor weighs heavily in favor of amendment.

Other factors also weigh in favor of granting leave to amend. For instance, a court can "consider whether a proposed amendment is a first attempt," as it would be here. Amyndas Pharms., S.A., 48 F.4th at 38. And at no point has the government

opposed Torres-Estrada's requests for leave to amend. Notably, in its reply in support of the first motion to dismiss, the government expressly stated that it did "not oppose leave to file an amended complaint." In addition, given the information asymmetry here -- where the government maintains the majority of the information that may come out in this litigation -- we see no reason why granting leave to amend would unfairly prejudice the government. See Villanueva v. United States, 662 F.3d 124, 127 (1st Cir. 2011) (affirming a denial of a motion to amend in part because it would be "unduly prejudicial to the United States").

Thus, we grant Torres-Estrada leave to amend on the grounds he requested.[10]

### III. Conclusion

For the foregoing reasons, we affirm the district court's dismissal in part, reverse in part, and grant Torres-Estrada leave to amend his complaint. We remand for further proceedings consistent with this opinion.

---

[10] This determination in no way prevents Torres-Estrada from otherwise seeking leave to amend pursuant to Federal Rule of Civil Procedure 15.